Matter of Stasack v New York State Dept. of Envtl. Conservation (2019 NY Slip Op 07669)





Matter of Stasack v New York State Dept. of Envtl. Conservation


2019 NY Slip Op 07669


Decided on October 24, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 24, 2019

527975

[*1]In the Matter of William Stasack et al., Petitioners,
v
New York State Department of Environmental Conservation, Respondent.

Calendar Date: September 6, 2019

Before: Garry, P.J., Egan Jr., Lynch and Pritzker, JJ.


David L. Gruenberg, Troy, for petitioners.
Letitia James, Attorney General, Albany (Joshua M. Tallent of counsel), for respondent.



Pritzker, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Commissioner of Environmental Conservation finding that petitioners impermissibly placed fill below the mean high-water mark of a navigable body of water.
In 1998, petitioners and Vonnie Vannier, the spouse of petitioner Stephen Stasack, purchased real property along South Long Pond in the Town of Grafton, Rensselaer County. Respondent commenced a civil enforcement proceeding alleging that petitioners violated ECL 15-0505 by placing fill below the mean high-water mark at South Long Pond without a permit. In their answer, petitioners denied the material allegations and asserted various affirmative defenses. Prior to a hearing, respondent moved to strike petitioners' affirmative defenses. The Administrative Law Judge (hereinafter ALJ) partially granted respondent's motion and, as relevant here, struck the affirmative defenses of statute of limitations and election of remedies. After mediation failed to produce a resolution, petitioners moved for summary judgment based upon, among other things, various affirmative defenses that had survived respondent's motion to strike. The ALJ denied the motion, and the matter proceeded to a hearing. Following a hearing, the ALJ issued a report finding that petitioners violated ECL 15-0505 and recommending, among other things, a civil penalty of $10,000. The Commissioner of Environmental Conservation largely adopted the ALJ's findings and imposed the recommended civil penalty. Petitioners thereafter commenced this CPLR article 78 proceeding seeking to annul the Commissioner's determination. Supreme Court transferred the proceeding to this Court (see CPLR 7804 [g]).
Petitioners initially assert that Supreme Court improperly transferred the proceeding without first addressing their affirmative defenses of statute of limitations and lack of subject matter jurisdiction, both of which were raised in their answer before respondent. This assertion, however, misconstrues CPLR 7804 (g), which provides that, before transferring the proceeding, the court shall first dispose of the objections in point of law raised by a respondent. As such, this statute speaks to the defenses interposed by a respondent in response to a CPLR article 78 proceeding commenced by a petitioner. Petitioners cite no authority permitting the court to first address their affirmative defenses that they raised in the administrative hearing. As such, the court did not err in transferring the proceeding without first ruling on petitioners' affirmative defenses. Even if the court did err, we may still retain jurisdiction in the interest of judicial economy (see Matter of Rovinsky v Zucker, 167 AD3d 122, 124 [2018]).
With respect to the affirmative defenses of statute of limitations and election of remedies that petitioners raised in the administrative hearing, petitioners are precluded from pursuing them in this proceeding due to their failure to exhaust administrative remedies. After the ALJ struck these affirmative defenses upon respondent's motion, petitioners could have appealed the ALJ's interlocutory decision (see 6 NYCRR 622.10 [d]). Petitioners, however, failed to do so and, therefore, they are precluded from litigating those affirmative defenses before this Court (see Matter of Palm v King, 122 AD3d 1110, 1111 [2014]; see generally Young Men's Christian Assn. v Rochester Pure Waters Dist., 37 NY2d 371, 375 [1975]).
Regarding the Commissioner's determination, as relevant here, "[n]o person . . . shall excavate or place fill below the mean high water level in any of the navigable waters of the state . . . without a permit" (ECL 15-0505 [1]). Petitioners argue that the evidence failed to show that South Long Pond was a navigable water. We disagree. Under the common law, a water is navigable in fact if it provides "practical utility to the public as a means for transportation" (Adirondack League Club v Sierra Club, 92 NY2d 591, 603 [1998]). Furthermore, "while the purpose or type of use remains important, of paramount concern is the capacity of the [water] for transport, whether for trade or travel" (id.). Petitioners' neighbor testified at the hearing that she observed other individuals use boats or canoes on South Long Pond and that she had personally accessed South Long Pond by boat from Dyken Pond.[FN1] A biologist with respondent's Bureau of Fisheries likewise testified that he was able to navigate between South Long Pond and Dyken Pond by boat and that there was a boat launch on Dyken Pond. He further testified that navigable waters do not include those waters that are "surrounded by land [and] held in a single private ownership at every point in their total area." Accordingly, we conclude that substantial evidence supports the Commissioner's determination that South Long Pond was a navigable water.[FN2] To that end, petitioners' related claim that respondent lacked subject matter jurisdiction because South Long Pond was not a navigable water is without merit.
The Commissioner also found, and the record confirms, that petitioners placed fill below the mean high-water mark at South Long Pond without a permit. The biologist testified that he visited the subject site and, based on, among other things, the available hydrological data and the vegetative and physical characteristics of the area, he determined the location of the mean high-water mark at South Long Pond. A photograph with flags and a spray-painted line showing the mean high-water mark was entered into evidence. Petitioners' neighbor testified that, in April 2003, she took pictures that depicted various individuals, including petitioner William Stasack, working on the beach area at South Long Pond with a truck and construction equipment. The photographs also depict those individuals with shovels, as well as an excavator, at the beach area. In addition, a police report prepared by one of the officers of respondent's law enforcement division indicated that petitioners placed fill in South Long Pond in 2003.[FN3] Given that the photographic and testimonial evidence establish that the beach area and jetty were below the mean high-water mark, and taking into account the biologist's testimony that petitioners did not have a permit, we find that substantial evidence supports the Commissioner's determination (see Matter of Supreme Energy, LLC v Martens, 145 AD3d 1147, 1148 [2016]; Matter of Scott v Department of Envtl. Conservation of State of N.Y., 112 AD2d 726, 726 [1985], lv denied 66 NY2d 606 [1985]).
We reject petitioners' contention that the Commissioner's determination must be vacated based upon their affirmative defenses of compromise and settlement or administrative delay. Petitioners initially sought summary judgment on these affirmative defenses, but the ALJ denied this requested relief. At the hearing, petitioners offered no proof to support these defenses, nor did their closing brief make any argument with respect to them. Accordingly, petitioners' reliance on these affirmative defenses is unavailing. To the extent that petitioners argue that equitable estoppel barred the administrative proceeding, such argument is unpreserved inasmuch as it was not raised before respondent in the administrative hearing (see Matter of Khan v New York State Dept. of Health, 96 NY2d 879, 880 [2001]).
As to the $10,000 civil penalty imposed by the Commissioner, petitioners contend that it should be reduced because the maximum civil penalty authorized by statute was $500. It is true that, at the relevant time, ECL 71-1127 (former [1]) provided that a violation of ECL article 15 carried with it a civil penalty of no more than $500. The statute, however, also stated that, in addition to this $500 civil penalty, there can be "an additional civil penalty of not more than [$100] for each day during which such violation continues" (ECL 71-1127 [former (1)]). The record discloses that petitioners violated ECL 15-0505 in 2003 by placing fill in South Long Pond and that, according to the biologist, the violation was still not corrected in 2011. In view of the continuing violation, we find that the $10,000 civil penalty was permissible. Finally, we are unpersuaded by petitioners' claim that the $10,000 civil penalty shocks the judicial conscience (see generally Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 233 [1974]). Petitioners' remaining arguments, to the extent not specifically discussed herein, have been considered and are without merit.
Garry, P.J., Egan Jr. and Lynch, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: South Long Pond and Dyken Pond are connected bodies of water.

Footnote 2: The ALJ concluded that South Long Pond was a navigable water under the common law and, as an alternative holding, also found that it was a navigable water under the pertinent statute and regulations. Because the Commissioner adopted the common law rationale, and in view of our determination, it is unnecessary to determine whether South Long Pond met the statutory and regulatory definition of a navigable water.

Footnote 3: Contrary to petitioners' assertion, the Commissioner properly considered the police report given that it was submitted in petitioners' motion for summary judgment as an exhibit and, therefore, was part of the administrative record (see State Administrative Procedure Act § 302 [1]).